UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:18-CV-00021-HBB

**JAMES T. WRIGHT**  PLAINTIFF

**VS.**

**NANCY A. BERRYHILL, Acting**
**Commissioner of Social Security**  DEFENDANT

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of James Wright seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 15) and Defendant (DN 20) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is REVERSED, and this matter is REMANDED pursuant to 42 U.S.C. § 405(g), to the Commissioner for further proceedings.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11). By Order entered June 4, 2018 (DN 12), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

Wright filed an application for a period of disability and disability insurance benefits on June 2, 2014 (Tr. 10). Wright alleged that he became disabled on April 1, 2013 as a result of heart disease, shortness of breath, high blood pressure, anxiety, and depression (Tr. 58). Administrative Law Judge, Lisa R. Hall ("ALJ"), conducted a video hearing on September 8, 2016 from Paducah, Kentucky. Wright participated via video conference from Owensboro, Kentucky and was represented by Sara J. Martin. Also present and testifying was Kenneth Boaz, an impartial vocational expert.

In a decision dated June 28, 2017, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 10-21). At the first step, the ALJ found Wright has not engaged in substantial gainful activity since May 1, 2014, the alleged onset date (Tr. 12). At the second step, the ALJ determined that Wright's coronary artery disease, peripheral arterial disease, asthma, and history of drug abuse are "severe" impairments within the meaning of the regulations (Tr. 12-13). Notably, at the second step, the ALJ also determined that Wright's hypertension is a "non-severe" impairment (Tr. 13). She also determined that Wright's anxiety and depression are not medically determinable impairments (Tr. 13). At the third step, the ALJ concluded that Wright does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 13).

At the fourth step, the ALJ found Wright has the residual functional capacity to perform light work with limitations (Tr. 14). Specifically, the ALJ found that Wright can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk for 6 hours each

out of an 8-hour workday; and can only occasionally climb ladders. He should avoid concentrated exposure to temperature extremes and pulmonary irritants. He should avoid even moderate exposure to hazards such as unprotected heights or dangerous moving machinery. (Tr. 14). Relying on testimony from the vocational expert, the ALJ found that Wright is unable to perform any of his/her past relevant work (Tr. 19).

The ALJ proceeded to the fifth step where he considered Wright's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 20). The ALJ found that Wright is capable of performing a significant number of jobs that exist in the national economy (Tr. 20). Therefore, the ALJ concluded that Wright has not been under a "disability," as defined in the Social Security Act, from April 1, 2013 through the date of the decision (Tr. 21).

Wright timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 1). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting

Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Wright's request for review of the ALJ's decision (Tr. 1). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

4

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Wrights's claim at the fifth step.

Challenged Findings

**1. Step Two: Severe Impairments**

Wright challenges the ALJ's step two finding that certain impairments were not severe under 20 C.F.R. § 404.1520 (DN 15-1 PageID # 1090-93). Specifically, Wright contends the ALJ erred for failing to consider his hypertension, anxiety, and depression as severe impairments (Id. at 1093).

The Commissioner contests Wright's argument. As an initial matter, the Commissioner argues that Wright has waived the argument that the ALJ failed to consider her hypertension a severe impairment (DN 20 PageID # 1112). The Commissioner addressed Wright's arguments

concerning his anxiety and depression when discussing the ALJ's residual functional capacity finding at step four (DN 20 Page ID # 1114), noting that the ALJ appropriately considered the impairments (Id. at 1114).

The undersigned will first address the hypertension argument. Wright has waived the claim that the ALJ "failed to consider, at all, his hypertension as a severe impairment" (DN 15-1 PageID # 1091). It is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); *see also* Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); Rice v. Comm'r of Soc. Sec., 2006 WL 463859, at *2 (6th Cir. 2006) (unpublished opinion). Wright has offered nothing but the above conclusory statement that the ALJ failed to consider his hypertension a severe impairment.

Waiver notwithstanding, the record does not support Wright's claim. A severe impairment is one that "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404 1502(c). The ALJ acknowledged Wright's hypertension but noted treatment records showed that it was stable with medication and caused no organ damage (Tr. 13). The ALJ found that the evidence indicated Wright's hypertension "does not more than minimally limit the claimant's ability to perform basic work activities" (Tr. 13). Thus, the ALJ found the impairment to be non-severe and supported that finding with substantial evidence. Furthermore, the ALJ properly considered Wright's hypertension when determining his residual functional capacity at the fourth step in the sequential evaluation process. An ALJ must consider the

functional limitations of all a claimant's impairments, severe or not. Maziarz v. Sec'y of HHS, 837 F. 2d 240, 244 (6th Cir. 1987). Wright's hypertension was a factor in the ALJ's finding that he was capable of light work with limitations (Tr. 16).

Wright also argues that the ALJ erred by failing to recognize his anxiety and depression as severe impairments (DN 15-1 PageID # 1093). Although not advanced by the Commissioner, the undersigned also deems this argument waived. Again, Wright offers nothing more than mere conclusory statements that the impairments are severe and debilitating (Id.). A symptom cannot be the basis for a finding of disability unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment. Social Security Ruling 96-4p. The ALJ addressed Wright's purported anxiety and depression at step two. She noted that the record contains mere references to anxiety and depression, but no diagnosis or medical signs are present beyond Wright's self-reported symptoms. Wright has provided no evidence to contradict the ALJ's finding, offering mere assertions that his anxiety and depression should have been considered severe impairments. His argument is waived.

2. Step Four: Residual Functional Capacity

    a. Peripheral Artery Disease

Wright presents two arguments that the ALJ committed error when she found that he possessed the residual functional capacity to perform light work with some limitations. The first is that substantial evidence does not support the ALJ's finding that Wright can perform light work with a history of peripheral artery disease (DN 15-1 PageID # 1090). The Commissioner rebuts this claim and argues that the ALJ adequately considered all the medical evidence in the record and supported her opinion with substantial evidence.

Wright correctly notes that an administrative law judge is required to consider the claimant's combination of impairments and their effects (DN 15-1 PageID # 1090, citing 43 U.S.C. § 423 (d)(2)(c) and Hall, 835 F. 2d at 49). He contends that the ALJ failed to fully consider the limitations of his peripheral heart disease, including his purported inability to stand and/or walk for long periods of time, when determining his RFC (Id.). The record suggests otherwise. The ALJ thoroughly examined Wright's medical history throughout her opinion. She explained that objective medical evidence did not support Wright's claim that his peripheral artery disease was disabling (Tr. 16). Images of Wright's arteries indicated only mild peripheral artery disease in his lower extremities (Tr. 16 citing Exhibits 6F/80, 7F/34, 14F/20). The ALJ noted that Wright's subjective complaints of debilitating pain were not corroborated by examinations which produced no signs of distress or swelling (Tr. 16). A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a). The ALJ considered Wright's subjective complaints as well as the medical evidence. Notably, the ALJ did not take the recommendations of state agency examiners who, without record of his peripheral artery disease, opined that Wright could complete medium exertional work. She specifically credited Wright's peripheral artery disease as the reason for downgrading his residual functional capacity to light work with certain limitations (Tr. 17).

Wright makes his case by pointing to medical evidence that does suggest he cannot walk or stand for prolonged periods of time, claiming this "confirms Mr. Wright's complaints" (DN 15-1 PageID # 1092). This argument misconstrues the role of this Court. This Court is limited to

8

determining if the ALJ's findings are supported by substantial evidence. If so, this Court may not disturb the decision, even if substantial evidence would support the opposite conclusion. 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992). The ALJ's decision was supported by substantial evidence. Therefore, it is of no import that substantial evidence may also support Wright's claim that his peripheral heart disease renders him unable to walk or stand for prolonged periods of time. This Court will not overturn the ALJ's finding.

### b. Dr. Nguyen's Opinion

Wright next argues that there was not substantial evidence to support the ALJ's decision to afford the opinion of his treating physician, Dr. Nguyen, little weight. He argues that the opinion should have been given great weight, and if it had, Wright would have been considered disabled. The Commissioner argues the decision was supported by substantial evidence and the ALJ adequately explained her "good reasons" for discounting Dr. Nguyen's opinion (DN 20 PageID # 1118).

The process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the medical opinion of the treating source. 20 C.F.R. §§ 404.1527(c); 416,927(c). If controlling weight is not assigned to the treating source's opinion, the Administrative Law Judge must consider the factors in paragraphs (c)(1)-(6) of this section in deciding how much weight to afford each of the medical opinions in the record, including the medical opinion from the treating source. 20 C.F.R. §§ 404.1527(c); 416.927(c).

Social Security Regulations "provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker. Soc.

Sec. Rul. No. 96-6p, 1996 WL 374180 at *2 (Soc. Sec. Admin. July 2, 1996). Treating-source opinions must be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and the opinion is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404. 1527(c)(2). If an administrative law judge does depart from the treating-source opinion, it still must be weighed considering the length, frequency, nature, and extent of the treatment relationship between the source and the claimant. Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375-76 (6th Cir. 2013) (citing 20 C.F.R. § 404. 1527(c)(2). An administrative law judge is required to provide "good reasons for discounting the weight given to a treating-source opinion. Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375-76 (6th Cir. 2013). These reasons must be supported by evidence in the case record and sufficiently specific to make clear the weight assigned to the treating-source and the reasons for that weight. Gayheart 710 F.3d 365, at 375-76. These procedural requirements are not a mere formality but are intended to "safeguard the claimant's procedural rights. Cole, 661 F. 3d at 937.

The ALJ assigned Dr. Nguyen's opinion "very little weight" (Tr. 18). Despite Wright's claim that the ALJ "provided no real significant reason or specific citations to Dr. Nguyen's record" (DN 15-1 PageID # 1094), it is clear from her opinion that the ALJ fully considered Dr. Nguyen's opinion and provided several good reasons for discounting the opinion. The ALJ acknowledged that Dr. Nguyen was a treating-source but lamented the fact that his opinion is not consistent with his own treatment notes (Tr. 18). Dr. Nguyen's notes indicate Wright's coronary artery disease was medically managed with no reports of chest pain or shortness of breath (Tr. 18). Wright's musculoskeletal examination was normal, contradicting Dr. Nguyen's opinion that Wright could only sit for two hours a day (Tr. 18). And despite Dr. Nguyen opining that Wright

10

needed a cane or other assistive device to walk, he was never proscribed such a device, and tests demonstrated a normal gait and station upon multiple examinations (Tr. 18). These reasons show that the ALJ considered the factors enumerated in 20 C.F.R. 404.1527(c)(2) when assessing Dr. Nguyen's opinion. Her finding was supported by substantial evidence, and therefore will not be disturbed by this Court.

### 3. Step Five: A Significant Number of Jobs Exist in the Regional or National Economy

Wright's final argument is substantial evidence does not support the ALJ's finding that he can perform a significant number of jobs in the regional or national economy (DN 15-1 PageID # 1096). Wright argues that the vocational expert relied on obsolete job descriptions in the Dictionary of Occupational Titles (DOT) when he testified that Wright was able to perform the following jobs: bottling line inspector (DOT 920.687-042, small product assembler (DOT 706.684-022), monogram machine tender (DOT 583.685-046), small products sorter (DOT # 521.687-086), lamp shade assembler (DOT # 739.684-094), and stone setter (DOT # 735.687-034). Wright notes that these job descriptions have not been updated in the DOT since at least 1979 (DN 15-1 PageID # 1096). Wright contends that O*NET, an up to date source of occupational information, indicates that these jobs either no longer exist or have vastly different descriptions than in the DOT (Id.). Wright argues that because this information is obsolete, it is unreliable, and therefore cannot be considered substantial evidence to support the ALJ's finding. The Commissioner argues that Wright waived this argument for not raising it at his hearing (DN 20 PageID # 1122). Adding that even if the argument is not waived, the vocational expert's testimony provides substantial evidence for the ALJ's finding.

The Court will begin with Defendant's argument that Plaintiff forfeited this claim by failing to raise it during the administrative hearing through cross-examination of the vocational expert. First, Defendant's reliance on Kepke v. Comm'r of Soc. Sec., 636 F. App'x. 625, 636 (6th Cir. 2016) is misplaced. Kepke's argument concerned the Administrative Law Judge's failure to include a specific physical limitation in the hypothetical questions posed to the vocational expert.[1] Id. The Sixth Circuit held "[b]ecause Kepke failed to probe this alleged deficiency at the ALJ hearing, she forfeited this argument." Id. Implicit within this holding is the Sixth Circuit's recognition that Kepke knew about this physical limitation at the time of the administrative hearing and, therefore, she could have addressed the purported deficiency through cross-examination of the vocational expert. Id.

In contrast to the circumstances in Kepke, Plaintiff had no notice that the vocational expert would identify bottling line inspector (DOT 920.687-042), small product assembler (DOT 706.684-022), monogram machine tender (DOT 583.685-046), small products sorter (DOT # 521.687-086), lamp shade assembler (DOT # 739.684-094), and stone setter (DOT # 735.687-034), in response to the ALJ's hypothetical question (Tr. 51-52). Thus, prior to the administrative hearing, Plaintiff could not have conducted research about these six jobs on the DOT and O*NET[2]. Moreover, because there are literally thousands of jobs identified in the DOT[3], it is unlikely that Plaintiff had sufficient personal knowledge about these job descriptions to effectively cross-

---

1 The hypothetical questions to the vocational expert failed to specify the frequency of the claimant's need to alternate between sitting and standing. Kepke v. Comm'r of Soc. Sec., 636 F. App'x. 625, 636 (6th Cir. 2016).

2 The United States Department of Labor replaced the DOT with O*NET, a database that is continually updated based on data collection efforts that began in 2001. https://www.onetcenter.org/dataCollection.html; and https://www.oalj.dol.gov/LIBDOT.HTM

3 https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTINTRO.HTM

examine the vocational expert "on the fly." Therefore, to effectively cross-examine the vocational expert about the six jobs, Plaintiff would have needed to conduct research on the DOT and O*NET after the vocational expert identified these jobs. However, it would be impractical to conduct such research during the hearing. This places an unreasonable burden on the claimant. Therefore, the Commissioner's waiver argument fails.

Defendant's attempt to rebut Plaintiff's argument with Social Security Ruling 00-4p and cases such as Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 605-06 (6th Cir. 2009) and Isaac v. Colvin, No. 3:13-cv-125, 2014 WL 2931579, at *12-13 (S.D. Ohio, June 27, 2014) is also misguided. The purpose of this policy ruling is to emphasize that before deciding whether a vocational expert's testimony supports a disability determination, Administrative Law Judges must identify and obtain a reasonable explanation for any conflicts between the occupational evidence provided by the vocational expert and information in the DOT, including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO). SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000); Lindsley, 560 F.3d at 606; Martin v. Comm'r of Soc. Sec., 170 F. App'x 369, 374 (6th Cir. 2006). This policy ruling does not impose a duty on Administrative Law Judges to further interrogate a vocational expert when he or she testifies that there is no conflict between the vocational opinion and information in the DOT. S*ee* SSR 00-4p; Lindsley, 560 F.3d at 606. Further, when a vocational expert bases his opinion on the contents of the DOT and the Administrative Law Judge relies on that testimony, SSR 00-4p does not impose a duty on the Administrative Law Judge to resolve conflicts between the vocational expert's testimony and information from a different vocational publication. *See* Poe v. Comm'r of Soc. Sec., 342 F. App'x 149, 158 (6th Cir. 2009) (the

claimant's own vocational expert based his opinion on information from the Occupational Outlook Handbook). As the Ninth Circuit insightfully explained, "[SSR 00–4p] merely provides that where there is a conflict between the DOT and another source, and the ALJ relies on the other source, the ALJ must explain his reasons for doing so." Lee v. Barnhart, 63 F. App'x. 291, 292–93 (9th Cir.2003). Because such circumstances do not exist here, Defendant's reliance on SSR 00-4p is misguided.

Turning to the merits of Wright's claim, at the fifth step in the sequential evaluation process the Commissioner has the burden of demonstrating that a "significant" number of jobs exist in the local, regional and national economies that the claimant can perform given her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v) and (g); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). Essentially, the Commissioner can satisfy this burden in one of two ways. When a claimant's age, education, previous work experience, and residual functional capacity coincide with all the criteria of a particular Grid Rule in Appendix 2 of the regulations, referred to as the medical-vocational guidelines, the Commissioner may rely on that Grid Rule to meet this burden. 20 C.F.R. §§ 404.1569, 416.969; Grid Rule 200.00; Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Moon, 923 F.2d at 1181. However, when a claimant's residual functional capacity does not coincide with the criteria of a particular Grid Rule, the Commissioner is limited to using the Grid Rule as a framework in the decision-making process and must make a non-guideline determination based on the testimony of a vocational expert. 20 C.F.R. § 404.1566(e); Born, 923 F.2d at 1174; Varley v. Sec'y of Health & Human Servs., 820 F.2d 777,

14

779 (6th Cir. 1987); Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 531, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).

Here, the ALJ found that Plaintiff's residual functional capacity did not coincide with the criteria of Grid Rule 203.07 because Plaintiff could not perform a full range of light work (Tr. 20). Therefore, the ALJ used Grid Rule 202.21 as a framework in the decision-making process and made a non-guideline determination based on the vocational expert's testimony (Id.). In response to the ALJ's hypothetical question, the vocational expert testified that the hypothetical individual could perform work as a bottling line inspector (DOT # 920-687-042) which is light in exertional level, unskilled with an SVP of 1, and there are 217,000 such jobs in the national economy; small products assembler (DOT # 706.684-022) which is light in exertional level, unskilled with an SVP of 2, and there are 180,000 such jobs in the national economy; and a monogram machine tender (DOT 583.685-046) which is light in exertional level, unskilled with an SVP of 2, and there are 80,000 such jobs in the national economy (Tr. 51-52). The vocational expert testified further that if Wright were limited to sedentary occupations with the same non-exertional limitations that he could perform work as a small products sorter (DOT 521.687-086) which is sedentary, unskilled with an SVP of 2, and there are 106,000 jobs in the national economy; lamp shade assembler (DOT # 739.684-094) which is sedentary, unskilled SVP of 2, and there are 12,000 jobs in the national economy; and stone setter (DOT # 735.687-034) which is sedentary, unskilled SVP of 2, and there are 35,000 jobs in the national economy (Tr. 20-21). Pursuant to SSR 00-4p, the ALJ confirmed that the vocational expert's testimony was consistent with the information contained in the DOT (Tr. 52). Relying on the vocational expert's testimony in response to the hypothetical question, the ALJ found that there were jobs that existed in significant numbers in the national economy that

Wright could have performed considering his age, education, work experience, and residual functional capacity (Tr. 21).

The Sixth Circuit has made clear that there is no "magic number" that qualifies as "significant" for the purposes of satisfying this prong of the disability inquiry. Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988). Instead, the Court must make a fact-specific inquiry that is guided by common sense:

> We are not blind, however, to the difficult task of enumerating exactly what constitutes a "significant number." We know that we cannot set forth one special number which is to be the boundary between a "significant number" and an insignificant number of jobs. . .. A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; *the reliability of the vocational expert's testimony*; the reliability of the claimant's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on. The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation.

Id. (emphasis added). Here, Wright asserts that the vocational expert's testimony is not reliable because it is based on obsolete occupational descriptions in the DOT.

The vocational expert based his testimony on six job descriptions contained in the DOT, a document published by the United States Department of Labor ("DOL") that was last updated in 1991.[4] The regulations provide that the Commissioner "will take administrative notice of reliable job information available from various governmental and other publications." 20 C.F.R. §§ 404.1566(d), 416.966(d); Social Security Ruling 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). The regulations include the DOT within their non-exhaustive list of examples of sources from

---

4 https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTSPEC.HTM

which reliable job information is available. 20 C.F.R. §§ 404.1566(d)(1)-(5), 416.966(d)(1)-(5); see Wennersten v. Colvin, No. 12-cv-783-bbc, 2013 WL 4821474, at * (W.D. Wis. Sept. 10, 2013) ("the list is not exclusive"). Thus, a vocational expert may base his testimony on job descriptions in the DOT. However, the Sixth Circuit, albeit in an unpublished opinion, has made the following cautionary statement: "*common sense dictates* that when such descriptions appear obsolete, a more recent source of information should be consulted." Cunningham v. Astrue, 360 F. App'x 606, 615 (6th Cir. 2010) (emphasis added).

The DOT indicates the bottling line attendant (DOT # 920.687-042) occupational definition has not been updated since 1977[5], small products assembler (DOT # 706.684-022) has not been updated since 1979[6], the monogram machine tender (DOT # 583.685-046) occupational definition has not been updated since 1977[7], the small products sorter (DOT #521.687-086) has not been updated since 1977, the lamp shade assembler (DOT # 739.684-094) has not been updated since 1977, and the stone setter (DOT # 735.687-034) has not been updated since 1977. Thus, when the vocational expert responded to the ALJ's hypothetical question on September 8, 2016 (TR. 49) (Tr. 55), his testimony appears to have been based on occupational descriptions in the DOT that were 39 and 37 years old.

At the time of Wright's administrative hearing before the ALJ, more current occupational descriptions were available. Specifically, the DOL replaced the DOT with O*NET, a database that is continually updated based on data collection efforts that began in 2001.[8] *See* Cunningham,

---

5 https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT09A.HTM

6 https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT07A.HTM

7 https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT03A.HTM

8 https://www.onetcenter.org/dataCollection.html

360 F. App'x at 616; Johnson v. Berryhill, No. 4-16-CV-00106-HBB, 2017 WL 245326, *8 (W.D. Ky. June 6, 2017). Thus, like the Sixth Circuit in Cunningham, this Court will compare the job descriptions in the DOT with those set forth in O*NET to determine whether the vocational expert based his testimony on obsolete job descriptions.

The vocational expert identified bottling line inspector (DOT # 920-687-042) which is light in exertional level, unskilled with an SVP of 1 as a job Wright is capable of performing. The most similar occupational definition in the O*NET is "53-7064.00 Packers and Packagers, Hand." It has an SVP range of 4-6. But as evidenced by the vocational expert's testimony, Wright is incapable of performing jobs with an SVP range this high (Tr. 52-54). Because the occupational descriptions in the DOT and O*NET are tangibly different, the Court concludes the vocational expert's reliance on the 39-year-old DOT job description does not warrant a presumption of reliability. For this reason, the bottling line inspector position identified by the vocational expert will not be considered in assessing whether a substantial number of jobs exists that Wright can still perform despite his limitations.

The occupational description for small products assembler (DOT #706.684-022) is similarly unreliable. The most similar occupational definition in O*NET is "51-9199.00 – Production Workers, All Other."[9] This is a catch all titles that "represents a wide range of characteristics" There is no specific job information and no SVP score provided. The same O*NET occupational description is provided for monogram machine tender (DOT # 583.685-046), lamp shade assembler (DOT # 739.684-094), and stone setter (DOT # 735.687-034). The

---

9 https://www.onetonline.org/link/summary/51-9199.00

occupational descriptions in the O*Net are not only significantly different than the 39-year-old DOT descriptions, but they are too vague and do not provide adequate information about the exertion level required to perform the job. For these reasons, the small products assembler, monogram machine tender, lamp shade assembler, and stone setter positions identified by the vocational expert will not be considered in assessing whether a substantial number of jobs exist that Wright can perform.

Finally, the vocational expert identified several sedentary positions that Wright could perform. The first, small products sorter (DOT 521.687-086), has an SVP of 2. The corresponding O*NET description for this position is "51-9061.00 – Inspectors, Testers, Sorters, Samplers, Weighers." It has an SVP of 4 to 6. [10] Thus, according to the vocational expert's testimony Wright is incapable of performing this work. Therefore, the small products sorters cannot be considered in assessing whether a substantial number of jobs exists that Wright can perform.

The above analysis demonstrates that the discrepancies between the DOT and O*NET present sufficient doubt as to the reliability of the vocational expert's testimony to warrant a conclusion that the ALJ's step five determination was not supported by substantial evidence. After all, "[i]f the only jobs that the applicant is physically and mentally capable of doing no longer exist in the American economy (such as pin setter, phrenologist, leech collector, milkman, pony express rider, and daguerreotypist), the applicant is disabled from working, and likewise, as a realistic matter, if there is an insignificant number of such jobs." Herrmann v. Colvin, 772 F.3d 1110, 1113 (7th Cir. 2014). Notably, however, the undersigned is not concluding that these

---

10 https://www.onetonline.org/link/summary/51-9061.00

positions are obsolete, nor that they do not exist in significant numbers. Rather, this is a recognition that Plaintiff has created sufficient doubt to merit remand so that a vocational expert can determine whether these positions, as performed in the modern economy, are still occupations available to the Wright given his age, experience, education, and residual functional capacity.

Accordingly, the final decision of the Commissioner will be reversed, and this matter will be remanded, pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for reconsideration of whether the DOT listings were reliable in light of the economy as it existed at the time of the hearing before the ALJ. *See* <u>Faucher v. Sec'y of Health & Human Servs.</u>, 17 F.3d 171, 175 (6th Cir. 1994) (sentence four of 42 U.S.C. § 405(g) authorizes a post judgment remand).

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **REVERSED.**

**IT IS FURTHER ORDERED** that this matter is **REMANDED**, pursuant to 42 U.S.C. § 405(g), to the Commissioner for further proceedings.

Copies:    Counsel